IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 19-cv-03292-KLM

ALLISON BROOKMAN,

     Plaintiff,

v.

DILLON COMPANIES, LLC d/b/a KING SOOPERS, INC.,

     Defendant.

_____

**ORDER**
_____

**ENTERED BY MAGISTRATE JUDGE KRISTEN L. MIX**

This matter is before the Court on Plaintiff's **Motion to Limit Opinions of Philip Stull, M.D. Pursuant to F.R.E. 702** [#57][1] (the "Motion").  Defendant filed a Response [#63] in opposition to the Motion, and Plaintiff filed a Reply [#66].  The Court has reviewed the Motion [#57], the Response [#63], the Reply [#66], the entire case file, and the applicable law, and is sufficiently advised in the premises.  For the reasons set forth below, the Motion [#57] is **DENIED**.[2]

## I.  Summary of the Case

This matter arises out of a December 24, 2017 slip-and-fall accident on Defendant's King Soopers grocery store premises, where Plaintiff suffered injury to her right hamstring and shoulder.  *Compl.* [#7] at 2.  Plaintiff purportedly continues to suffer

---

[1] [#57] is an example of the convention the Court uses to identify the docket number assigned to a specific paper by the Court's electronic case filing and management system (CM/ECF).  This convention is used throughout this Order.

[2] This case has been referred to the undersigned for all purposes pursuant to D.C.COLO.LCivR 40.1(c) and 28 U.S.C. § 636(c), on consent of the parties.  *See* [#16, #17].

from chronic pain which Plaintiff and her experts allege results from a sciatic nerve injury caused by Plaintiff's fall. *See Motion* [#57] at 1-2. Through this lawsuit, Plaintiff seeks a variety of damages including medical and rehabilitation expenses, other economic losses, and damages for physical impairment. *Compl.* [#7] at 3-4. According to the present Motion [#57], "Plaintiff has incurred $87,454.70 in prior medical bills and will incur approximately $1.3 million in future medical bills for multiple future surgeries, including the installation of a neurostimulator for chronic pain management." *Motion* [#57] at 1.

Defendant states that, "[t]he neurostimulator trial and implantation accounts for $1,111,683.00 of [this future medical bill cost]." *Response* [#63] at 1. "Central to the dispute regarding the relatedness of the neurostimulator implantation to the subject incident is the cause of Plaintiff's persistent right buttock and right thigh pain." *Id.* at 2. Defendant has retained Dr. Philip Stull ("Stull"), an orthopedic surgeon, to provide his opinion on Plaintiff's injury. *Id.* "Dr. Stull opines that, while Plaintiff's right hamstring tear and right rotator cuff tear are related to the subject incident, Plaintiff's persistent pain in her buttock and right thigh is related to pre-existing degenerative changes in her lower back. Thus, Dr. Stull does not relate the need for the neurostimulator implantation to the subject incident." *Id.* "Specifically, Dr. Stull reasons that Plaintiff does not have a sciatic nerve injury because she did not complain of neurologic symptoms in the right leg for 'many months' according to the medical records and that sciatic nerve injury is 'generally not related to a hamstring tear, as those common injuries generally do not cause persistent pain or neurologic symptoms.'" *Motion* [#57] at 2.

In the instant Motion [#57], Plaintiff asks the Court to "limit Dr. Stull from testifying that (1) Plaintiff's sciatic nerve was not injured and (2) Plaintiff's pain is derivative of the

2

L3/4 level, or in other words, derivative of L3 nerve root compression." *Id.*  Plaintiff broadly asserts two grounds for excluding Dr. Stull's testimony under Fed. R. Evid. 702: (1) "Dr. Stull is not an expert in the lumbar spine, the hamstring, or the sciatic nerve," and (2) Dr. Stull's methodology is not reliable.  *Id.* at 4, 7-8.

Defendant counters that, "[c]ontrary to Plaintiff's assertions, Dr. Stull is qualified to offer the opinions expressed in his report.  Dr. Stull's methodology in forming his opinions is reliable – he applies his knowledge, skills, training, education, and experience to the facts of the case, as all other medical experts do.  Dr. Stull should not be prevented from offering opinions simply because Plaintiff or her counsel disagree with them." *Response* [#63] at 2-3.  Defendant further asserts that "Plaintiff's issues with Dr. Stull's opinion are appropriate for cross examination but not to limit or strike his opinion . . . [which] should be admitted in its entirety and the ultimate assessment of its weight and credibility should be left to the jury." *Id.* at 3.

## II.  Standard of Review

Admission at trial of expert testimony is governed by Fed. R. Evid. 702 and requires a two-step analysis.  *103 Investors I, L.P. v Square D Co.*, 470 F.3d 985, 990 (10th Cir. 2006).  "First, the court must determine whether the expert is qualified by 'knowledge, skill, experience, training, or education' to render an opinion."  *Id.* (citation omitted). "Second, if the expert is sufficiently qualified, the court must determine whether the opinion is reliable under the principles set forth in *Daubert.*"  *Id.* (citing *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993)).

The Court has a "gatekeeping role" in deciding whether to admit or exclude expert testimony and must determine that the testimony is both reliable and relevant.  *Daubert*,

509 U.S. at 589, 597.  An opinion is reliable if the reasoning or methodology of the expert is valid and "can be applied to the facts in issue."  *Id.* at 592.  When assessing reliability, "the court may consider several nondispositive factors: (1) whether the proffered theory can [be] and has been tested;  (2) whether the theory has been subject to peer review; (3) the known or potential rate of error;  and (4) the general acceptance of a methodology in the relevant scientific community."  *103 Investors I, L.P.*, 470 F.3d at 990 (citing *Daubert*, 509 U.S. at 593-94).  These considerations are not exhaustive.  Rather, "the trial judge must have considerable leeway in deciding in a particular case how to go about determining whether particular expert testimony is reliable."  *Kumho Tire Co. v. Carmichael*, 526 U.S. 137 (1999).  Ultimately, the test requires that the expert "employs in the courtroom the same level of intellectual rigor that characterizes the practice of any expert in the relevant field."  *Id.*  An opinion is relevant if it "will assist the trier of fact to understand the evidence or to determine a fact in issue."  *Id.*

Ultimately, the determination of whether expert testimony should be admitted is within the sound discretion of the trial court.  *Vining v. Enter. Fin. Grp.*, 148 F.3d 1206, 1218 (10th Cir. 1998).  "[T]he rejection of expert testimony is the exception rather than the rule."  *O'Sullivan v. Geico Cas. Co.*, 233 F. Supp. 3d 917, 922 (D. Colo. 2017) (quoting Fed. R. Evid. 702 advisory committee's note).  "[T]he trial court's role as gatekeeper is not intended to serve as a replacement for the adversary system. . . .  Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence."  *Id.*

While the proponent of the challenged testimony has the burden of establishing admissibility, its proffer is tested against the standard of reliability, not correctness; a proponent need only prove that "the witness has sufficient expertise to choose and apply a methodology, that the methodology applied was reliable, that sufficient facts and data as required by the methodology were used and that the methodology was otherwise reliably applied." *United States v. Crabbe*, 556 F. Supp. 2d 1217, 1221 (D. Colo. 2008) (citing *Mitchell v. Gencorp Inc.*, 165 F.3d 778, 781 (10th Cir. 1999)).

### III.  Analysis

Plaintiff moves "to limit Dr. Stull from testifying that (1) Plaintiff's sciatic nerve was not injured and (2) Plaintiff's pain is derivative of the L3/4 level, or in other words, derivative of L3 nerve root compression." *Motion* [#57] at 2.  Defendant contends that "Dr. Stull is qualified to offer his opinion in this case, which is both reliable and useful to the jury.  His opinion should be admitted in its entirety and the ultimate assessment of its weight and credibility should be left to the jury." *Response* [#63] at 3.  Defendant further notes that Dr. Stull "has never had his opinions limited in a court of law on the basis that he lacked expertise." *Id.* at 6.

Following an extensive review of Dr. Stull's deposition and report, and the evidence provided by the parties with the briefing on the instant Motion [#57], the Court concludes that Dr. Stull's opinions are admissible, and that the trier of fact should decide whether those opinions are correct.  The first and second of Plaintiff's assertions revolve around arguments that Dr. Stull lacks the necessary qualifications to opine on Plaintiff's injuries, and these issues of qualification are addressed together below.  The third, fourth, and

fifth of Plaintiff's assertions revolve around arguments that Dr. Stull's methodology is unreliable, and those issues of methodology are also addressed together below.

## A.       Qualifications

Plaintiff first asserts that "Dr. Stull is clearly not an expert in the lumbar spine" because "he has never performed a lumbar fusion or lumbar diskectomy, two very common lumbar surgeries, and admits that he is not a spine specialist . . . he has zero patients in his care currently who have a primary complaint of back pain . . . [and] readily admitted that he would refer Plaintiff to a 'spine specialist' if Plaintiff came to him for treatment." *Motion* [#57] at 4-5.  Plaintiff maintains instead that Dr. Stull is a shoulder and knee doctor who refers out "'advanced cases' like Plaintiff because he is not a back doctor." *Reply* [#66] at 1-2.  Defendant asserts that Dr. Stull "understands and considers himself an expert on lumbar spine issues and pain presentation from the same.  He sees and treats patients for back pain in his practice." *Response* [#63] at 6 (internal citations omitted).

Plaintiff further asserts that "Dr. Stull does not have [e]xperience in the [s]ciatic [n]erve or [h]amstring" because "Dr. Stull readily admits that he is neither an expert in neurology nor neurosurgery, and that he is not the kind of doctor who works with peripheral nerves like the sciatic nerve . . . .  Dr. Stull has never lectured on the sciatic nerve or hamstring, has never authored a publication on the sciatic nerve or hamstring, and has only treated 15 patients with a similar hamstring avulsion injury to Plaintiff . . . [which] represent .001% of Dr. Stull's clinical practice." *Motion* [#57] at 5.  Additionally, Plaintiff maintains that this "15-patient population is insufficient to support the opinion that sciatic nerve injury could not have occurred due to Plaintiff's hamstring avulsion or that

Plaintiff's sciatic nerve pain took too long to manifest."  *Reply* [#66] at 4.  Defendant

asserts that Dr. Stull "has treated at least 675 hamstring injuries in his career," and

contends that he "has sufficient experience with hamstring injuries to know that hamstring

repair surgery is generally rare . . . and that the majority of complete hamstring tears heal

and do not cause disabling symptoms.  He is aware that sciatic nerve injuries may

accompany proximal hamstring tears.  It is simply his opinion that that is not what

happened here."  *Response* [#63] at 5-6 (internal citations omitted).  Defendant further

contends that "Dr. Stull's opinions, based on his nearly 27 years of experience as an

orthopedic surgeon, that proximal hamstring tears generally do not cause neurologic

symptoms, and sciatic nerve injuries associated with proximal hamstring tears are

uncommon, tend to make facts of consequence to the determination of Plaintiff's sciatic

nerve injury claim more or less probable and thus, are relevant and will assist the jury in

determining this case."  *Id.* at 10.

The Court notes that the Tenth Circuit has stated that "[t]he decision to exclude

evidence is a drastic sanction."  *Summers v. Missouri Pac. R.R. Sys.*, 132 F.3d 599, 604

(10th Cir. 1997).  Here, the Court finds that Dr. Stull, by and through his extensive

experience as an orthopedic surgeon and medical training, is qualified to opine on the

orthopedic nature and causes of Plaintiff's injuries.  *See United States v. Dysart*, 705 F.2d

1247, 1252 (10th Cir. 1983) ("'[A] witness qualified as an expert by knowledge, skill

experience, training, or education may testify thereto . . . .'"); *Wolford v. United States*,

401 F.2d 701, 705 (10th Cir. 1968) (acceptance or rejection of an expert witness'

qualifications is a matter within the discretion of the trial court).  As noted by Defendant,

"there are multiple avenues for qualifying someone as an expert – including through

'knowledge, skill, experience, training, or education . . . .'"  *See United States ex rel. Polukoff v. St. Mark's Hosp.*, No. 2:16-CV-304 TS, 2020 WL 2927865, at \*3 (D. Utah June 3, 2020) (citing Fed. R. Evid. 702).  Any of these qualifications can be sufficient to support a finding that an expert is qualified.  *See* Fed. R. Evid. 702 Advisory Committee Notes, 2000 Amendments.

Dr. Stull is a Yale University School of Medicine graduate, who completed his residency in orthopedic surgery at the Columbia-Presbyterian Medical Center, completed a fellowship at the University of Colorado Aspen Valley Hospital, has practiced as an orthopedic surgeon at Colorado Orthopedic Consultants for 27 years, and additionally served as the head physician for multiple professional sports teams.  *Response* [#63] at 5-6.   Additionally, Dr. Stull has treated an estimated 108,000-135,000 patients, *Motion* [#57] at 3-4, including 675 patients with hamstring injuries, *Response* [#63] at 5-6, with 15 of those 675 patients having suffered injuries very similar to Plaintiff's, *Motion* [#57] at 5.  Although "merely possessing a medical degree is not sufficient to permit a [doctor] to testify concerning any medical-related issue," *Ralston v. Smith & Nephew Richards, Inc.*, 275 F.3d 965, 970 (10th Cir. 2001), Dr. Stull's curriculum vitae shows that his educational and professional background qualifies him to testify here, *see United States ex rel. Gerald Polukoff, M.D.*, No. 2:16-CV-304 TS, 2020 WL 2927865, at \*3.  Thus, the Court finds the information discussed above establishes Dr. Stull's qualifications to serve as an expert witness in this case by a preponderance of the evidence.  *See Crabbe*, 556 F. Supp. 2d at 1220-21 (citing *Daubert*, 509 U.S. at 592).

**B.      Methodology**

8

Next, Plaintiff asserts that while "Dr. Stull claims in his report that, 'generally speaking,' a proximal hamstring tear does not cause neurologic symptoms . . . Dr. Stull reviewed no literature in conjunction with this case, and unsurprisingly, Dr. Stull does not know if there are case reports in medical literature describing sciatic nerve injury after a proximal hamstring avulsion." *Motion* [#57] at 6.  Defendant asserts that Dr. Stull "is versed on authoritative journals in orthopedic medicine and surgery" and that "[b]ased on his knowledge, skill, experience, training, and education as an orthopedic surgeon, he opines that Plaintiff's persistent right buttock and right thigh pain is caused by her pre-existing lower back degenerative changes." *Response* [#63] at 6-7.

Plaintiff further asserts that "Dr. Stull mechanically opines that because the lumbar MRI shows foraminal narrowing at the L3/4 level, that narrowing is causing Plaintiff's lower extremity pain complaints." *Id.* at 7.  Additionally, since he "has never reviewed the MRI film" and "did not know in deposition the significance of the foraminal narrowing – whether it was mild, moderate, or severe" that Dr. Stull's methodology is unreliable because, "as noted in the New England Journal of Medicine, reviewing an MRI for lumbar pathology, without more, is not a reliable method to determine whether a patient will present with symptoms due to that pathology." *Id.* at 8.  Defendant notes that "Dr. Stull's opinion regarding the cause of Plaintiff's right buttock and right thigh pain is not only based on his review of the MRI reports, but also EMG and nerve conduction tests Plaintiff underwent that were normal, as well as a review of her other medical records, deposition testimony, and discovery responses." *Response* [#63] at 8.

Lastly, Plaintiff asserts that Dr. Stull's claims "that he was provided with 'limited' medical records generated prior to the incident" are "speculative and are not probative of

any actual issue in this case and should be barred" because, "[i]f the claimed 'missing' medical records were truly necessary for the completion of Dr. Stull's report, Defendant should have sought court relief or conferred to obtain records it and Dr. Stull believed to be missing."  *Motion* [#57] at 9.  Defendant maintains that "Plaintiff underwent several procedures with Dr. Feldman in 2020, including lumbar facet injections/medial branch blocks, and at least one, possibly two, lumbar radiofrequency ablations.  However, Plaintiff has yet to disclose any medical records for the treatment – despite undersigned counsel requesting them several times."  *Response* [#63] at 9-10 (emphasis omitted).  Plaintiff contends that Defendant's "argument is a red herring and has nothing to do with the issues here," but goes on to say, "Plaintiff did not produce these records because Dr. Feldman's office neglected to send them despite Plaintiff's request."  *Reply* [#66] at 9.

First, the Court addresses the issues raised regarding Plaintiff's allegedly incomplete medical history.  Plaintiff concedes that the records exist and were in fact missing due to Dr. Feldman's office neglecting to send them, but that the records have since been obtained and disclosed.  *Reply* [#66] at 9. To the extent, therefore, that Dr. Stull nevertheless intends to testify that he was provided with limited medical records dated before the incident, his testimony would be subject to vigorous cross-examination. To the extent that he does not intend to so testify, this issue appears to be moot. Regardless, Plaintiff's contention that the Court should preclude Dr. Stull from so testifying is inappropriate.  To the extent that the issue of Dr. Stull's review of Dr. Feldman's records remains a *factual* dispute, it should be dealt with by the usual trial method for handling factual disputes: direct examination and cross examination of the appropriate witness.

10

Second, the Court finds that Dr. Stull's opinions are reliably based on quantitatively sufficient facts and data.  *See United States v. Lauder*, 409 F.3d 1254, 1264 (10th Cir. 2005) (Rule 702's "reference to 'sufficient facts or data' calls for a quantitative rather than qualitative analysis").  Courts may consider a variety of appropriate factors in assessing reliability. These include, but are not limited to: (1) whether the methodology is one that can be tested or falsified – that is, whether the witness' approach can be challenged in some objective sense, or whether it is instead simply a subjective, conclusory approach that cannot reasonably be assessed for reliability; (2) whether the method or technique has been subject to peer review and publication; (3) where there are known or potential rates of error with regard to the use of the method; and (4) whether the method or approach has "general acceptance" in the scientific community.  *See Daubert*, 509 U.S. at 593-94; *Kumho Tire*, 526 U.S. at 149-50.  Furthermore, Defendant "need not prove that the expert is indisputably correct or that the expert's theory is 'generally accepted.'" *Mitchell*, 165 F.3d at 781.

Here, Dr. Stull reviewed and based his opinions regarding the cause of Plaintiff's pain on examination of the relevant MRI reports and EMG and nerve conduction tests, as well as a review of Plaintiff's other medical records, deposition testimony, discovery responses, and his decades-long experience as an orthopedic surgeon.  *Response* [#63] at 8.  Although Plaintiff protests that Dr. Stull's patient population is insufficient for him to opine that Plaintiff's persistent pain results from her degenerating back and not from her slip-and-fall accident, *see Motion* [#57] at 5, suggestions that the witness should have engaged in additional quantitative study to achieve certainty in his conclusions are matters going to the weight of the opinion, not its admissibility.  *See Bitler v. A.O. Smith*

*Corp.*, 400 F.3d 1227, 1236 (10th Cir. 2005). Thus, the Court holds that Dr. Stull's

methodology is reliably based upon quantitatively sufficient facts and data to be useful to

the trier of fact, and that the weight given to Dr. Stull's opinions should therefore be

determined by that trier of the fact. *See Daubert*, 509 U.S. at 596 ("Vigorous cross-

examination, presentation of contrary evidence, and careful instruction on the burden of

proof . . . rather than wholesale exclusion . . . are the appropriate safeguards where the

basis of [expert] testimony meets the standards of Rule 702."); *United States ex rel.

Maxwell v. Kerr-McGee Chemical Worldwide, LLC.*, No. CIVA04CV01224PSFCBS, 2006

WL 2053534, at *6 (D. Colo. July 21, 2006) (stating that the defendant's attack on the

plaintiff's methodology is more properly directed to the weight of the proffered opinions

and not to their admissibility); *see also United States v. 14.38 Acres of Land*, 80 F.3d

1074, 1079 (5th Cir. 1996) (the perceived flaws in the testimony of the experts are

"matters properly to be tested in the crucible of the adversarial proceedings; they are not

the basis for truncating that process").

## IV. Conclusion

For the reasons set forth above,

IT IS HEREBY **ORDERED** that the Motion [#57] is **DENIED**.

Dated: July 19, 2021

BY THE COURT:

Kristen L. Mix
United States Magistrate Judge