IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 19-cv-03292-KLM

ALLISON BROOKMAN,

    Plaintiff,

v.

DILLON COMPANIES, LLC d/b/a KING SOOPERS, INC.,

    Defendant.

---

## ORDER
___

**ENTERED BY MAGISTRATE JUDGE KRISTEN L. MIX**

This matter is before the Court on Defendant's **Motion to Strike the Opinion of Plaintiff's Retained Costs Expert Mark L. Guilford Pursuant to Fed. R. Evid. 403 and 702** [#56][1] (the "Motion"). Plaintiff filed a Response [#59] in opposition to the Motion [#56], and Defendant filed a Reply [#68]. The Court has reviewed the Motion [#56], the Response [#59], the Reply [#68], the entire case file, and the applicable law, and is sufficiently advised in the premises. For the reasons set forth below, the Motion [#56] is **DENIED**.[2]

### I. Summary of the Case

This matter arises out of a December 24, 2017 slip-and-fall accident on Defendant's King Soopers grocery store premises, where Plaintiff suffered injury to her

---

[1] [#56] is an example of the convention the Court uses to identify the docket number assigned to a specific paper by the Court's electronic case filing and management system (CM/ECF). This convention is used throughout this Order.

[2] This case has been referred to the undersigned for all purposes pursuant to D.C.COLO.LCivR 40.1(c) and 28 U.S.C. § 636(c), on consent of the parties. *See* [#16, #17].

right hamstring and shoulder. *Compl.* [#7] at 2. "Specifically, Plaintiff alleges she slipped and 'did the splits' in the produce department . . . ." *Motion* [#56] at 1. Plaintiff has retained Mark Guilford ("Guilford") as a costs expert. *Response* [#59] at 2. Mr. Guilford is a trained financier and Chief Executive Officer ("CEO") of AccuMed HealthCare Research, LLC ("AccuMed"), a medical billing data analytics company. *Guilford CV* [#59-4] at 1-2. Plaintiff intends Mr. Guilford to offer opinions on the reasonableness of Plaintiff's past medical bills and to "opine on the cost of Plaintiff's future medical care." *Response* [#59] at 1-2.

Relying on Fed. R. Evid. 702 and 403, Defendant asks that "Mr. Guilford's opinion [ ] be stricken by the Court and Plaintiff should be precluded from proffering his testimony at trial." *Motion* [#56] at 3. Defendant asserts that, "[d]espite having no experience, training, or education in medical billing and thus, being unqualified to do so, Mr. Guilford opines as to the reasonableness of Plaintiff's past and future medical expenses*." Id.* at 2. Defendant further asserts that Mr. Guilford's "opinion is not based on sufficient facts and data, and his 'methodology' is unreliable, misleading, and unhelpful to the jury[, and that t]he probative value of Mr. Guilford's opinion (if any) is far outweighed by the danger of unfair prejudice to the Defendant . . . ." *Id.* at 2-3. Plaintiff maintains that "Mr. Guilford is qualified to opine on the reasonableness of medical bills, his method is reliable, and he offers considerable value for a jury." *Response* [#59] at 2.

## II. Analysis

Following extensive review of Mr. Guilford's depositions and other evidence provided by the parties with the briefing on the instant Motion [#56], the Court concludes

that Mr. Guilford's opinions are admissible, and that the trier of fact should be permitted to consider and weigh those opinions.

**A.     Fed. R. Evid. 702**

Admission at trial of expert testimony is governed by Fed. R. Evid. 702 and requires a two-step analysis. *103 Investors I, L.P. v Square D Co.*, 470 F.3d 985, 990 (10th Cir. 2006). "First, the court must determine whether the expert is qualified by 'knowledge, skill, experience, training, or education' to render an opinion." *Id.* (citation omitted). "Second, if the expert is sufficiently qualified, the court must determine whether the opinion is reliable under the principles set forth in *Daubert*." *Id.* (citing *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993)).

While the proponent of the challenged testimony has the burden of establishing admissibility, its proffer is tested against the standard of reliability, not correctness; a proponent need only prove that "the witness has sufficient expertise to choose and apply a methodology, that the methodology applied was reliable, that sufficient facts and data as required by the methodology were used and that the methodology was otherwise reliably applied." *United States v. Crabbe*, 556 F. Supp. 2d 1217, 1221 (D. Colo. 2008) (citing *Mitchell v. Gencorp Inc.*, 165 F.3d 778, 781 (10th Cir. 1999)).

The Tenth Circuit has stated that "[t]he decision to exclude evidence is a drastic sanction." *Summers v. Missouri Pac. R.R. Sys.*, 132 F.3d 599, 604 (10th Cir. 1997). Ultimately, though, the determination of whether expert testimony should be admitted is within the sound discretion of the trial court. *Vining v. Enter. Fin. Grp.*, 148 F.3d 1206, 1218 (10th Cir. 1998). "[T]he rejection of expert testimony is the exception rather than the rule." *O'Sullivan v. Geico Cas. Co.*, 233 F. Supp. 3d 917, 922 (D. Colo. 2017) (quoting

Fed. R. Evid. 702 advisory committee's note). "[T]he trial court's role as gatekeeper is not intended to serve as a replacement for the adversary system. . . . Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Id.*

### 1. Qualifications

Defendant first asserts that "Mr. Guilford is not qualified to opine on the reasonableness of Plaintiff's past and future medical expenses" because he "has no training or education in healthcare financing or medical billing or cost-setting" and no "training or experience in the healthcare industry in any medical billing or cost-setting roles." *Motion* [#56] at 4 (italics omitted). Defendant further asserts that Mr. Guilford's "opinion is simply the product of data entry . . . [and a]nyone, regardless of education, knowledge, skills, or training, can purchase a cost estimate/historical analysis or an express report from AccuMed's website by entering some basic geographic and procedure information." *Id.*

Plaintiff asserts that "Mr. Guilford possesses an extensive background in financial valuation and data analytics, the proposed subject matter of his expert testimony." *Response* [#59] at 3. Plaintiff further asserts that Mr. Guilford (1) is experienced "in investment banking, 'advising clients on capital raises, mergers, and acquisitions totaling $1.8 billion' which required valuation of assets, services, and products," (2) "ran stochastic simulations for probabilistic analyses, which gave [him] a deep knowledge of statistics," (3) "started AccuMed, a data analytics company that specializes in healthcare billed charges," (4) "maintains a database of over 1.1 million medical providers, located

4

throughout the United States, with 6.7 billion patient encounter billing data . . . sourced from 31 distinct data sets," (5) "works directly with medical providers in helping them set reasonable fee schedules, . . . play[ing] a personal role in this service offering," and (6) "has also studied several medical billing textbooks." *Response* [#59] at 3-6.

"[T]here are multiple avenues for qualifying someone as an expert – including through 'knowledge, skill, experience, training, or education . . . .'" *See United States ex rel. Polukoff v. St. Mark's Hosp.*, No. 2:16-CV-304 TS, 2020 WL 2927865, at *3 (D. Utah June 3, 2020) (citing Fed. R. Evid. 702).  Any of these qualifications can be sufficient to support a finding that an expert is qualified.  *See* Fed. R. Evid. 702 Advisory Committee Notes, 2000 Amendments.  Here, the Court finds that Mr. Guilford, by and through his experience as a statistical analyst with financial training, is qualified to opine on the statistical reasonableness of Plaintiff's past and future medical expenses.  *See United States v. Dysart*, 705 F.2d 1247, 1252 (10th Cir. 1983) ("'[A] witness qualified as an expert by knowledge, skill experience, training, or education may testify thereto . . . ."); *Wolford v. United States*, 401 F.2d 701, 705 (10th Cir. 1968) (acceptance or rejection of an expert witness' qualifications is a matter within the discretion of the trial court).

Mr. Guilford is a University of Colorado graduate trained in finance, with additional educational training in engineering and technology management from the Colorado School of Mines, with over a decade of experience as a financial analyst and manager, who co-founded a medical billing data analytics company and served as its Chief Operating Officer and CEO.  *See Guilford CV* [#59-4] at 1-2.  Additionally, Mr. Guilford has prepared analytical data for testimony and depositions in over fifty cases, *id.* at 3-5, through the use of data analytic software which he personally helped to design and which

5

utilizes a database of medical billing data that Mr. Guilford personally created and curates to produce quantitative analytics, *Response* [#59] at 6.  Lastly, Mr. Guilford utilizes self-study of medical billing textbooks and his personal experience working with medical providers to assist them in setting reasonable fees*.  Id.* at 4-5.  In short, the Court finds, by a preponderance of the evidence, that Mr. Guilford's educational and professional background qualifies him to testify here.  *See United States ex rel. Polukoff.*, No. 2:16-CV-304 TS, 2020 WL 2927865, at *3; *see Crabbe*, 556 F. Supp. 2d at 1220-21 (citing *Daubert*, 509 U.S. at 592); *O'Sullivan*, 233 F. Supp. 3d at 924 (specialized knowledge can be acquired through experience alone to meet the requirements of Fed. R. Evid. 702); *Jones v. State Farm Mut. Auto. Ins. Co.*, No. 19-cv-01873-NYW, at *16 (D. Colo. Apr. 27, 2021) (stating that "a person may obtain a sufficient level of education to qualify as an expert based on informal self-study or independent research") (internal quotations omitted); *Safe Street All. v. Alt. Holistic Healing, LLC*, No. 15-cv-00349-REB-SKC, 2018 WL 3861156, at *2 (D. Colo. Aug. 14, 2018) ("Nothing in the federal rules suggests that only one type of training or experience qualifies an expert to offer an opinion on a particular topic."); *Cook v. Rockwell Int'l Corp.*, 580 F. Supp. 2d 1071, 1084 (D. Colo. 2006) (noting that expertise in a specialized area directly related to the issue in question is generally not required under Fed. R. Evid. 702, so long as the expert "stays within the reasonable confines of his subject area").  Thus, the Motion [#56] is **denied** to the extent that Plaintiff seeks to bar Mr. Guilford's opinions on the basis of his qualifications.

### 2.   Methodology

The Court has a "gatekeeping role" in deciding whether to admit or exclude expert testimony and must determine that the testimony is both reliable and relevant.  *Daubert*,

509 U.S. at 589, 597.  An opinion is reliable if the reasoning or methodology of the expert is valid and "can be applied to the facts in issue." *Id.* at 592.  When assessing reliability, "the court may consider several nondispositive factors: (1) whether the proffered theory can [be] and has been tested;  (2) whether the theory has been subject to peer review;  (3) the known or potential rate of error;  and (4) the general acceptance of a methodology in the relevant scientific community."  *103 Investors I, L.P.*, 470 F.3d at 990 (citing *Daubert*, 509 U.S. at 593-94).  These considerations are not exhaustive.  Rather, "the trial judge must have considerable leeway in deciding in a particular case how to go about determining whether particular expert testimony is reliable."  *Kumho Tire Co. v. Carmichael*, 526 U.S. 137 (1999).  Ultimately, the test requires that the expert "employs in the courtroom the same level of intellectual rigor that characterizes the practice of any expert in the relevant field."  *Id.*  An opinion is relevant if it "will assist the trier of fact to understand the evidence or to determine a fact in issue."  *Id.*

Defendant asserts that "Mr. Guilford's opinion is unreliable and prejudicial because it is not based on sufficient facts and data and is not the product of reliable principles and methods."  *Motion* [#56] at 6 (italics omitted).  Further, Defendant asserts that Mr. Guilford "identifies a method whereby he pulls together billing data from certain datasets he selects, filters the data using several criteria he designs, then selects the 80th percentile as the 'reasonable value'" but "does not list out any established principles or methods upon which he relies that have been tested, subjected to peer review or publication, that have known or potential rates of error, or that have gained general acceptance within the medical billing community or healthcare industry."  *Id.* at 7-8.  Lastly, Defendant asserts that "Mr. Guilford's opinion is also confusing because it is based on both local and

7

nationwide data sets" and "[his] opinion does not include the underlying data from which he selects the 80th percentile 'reasonable value.'" *Id.* at 6-7. To show the purported invalidity of Mr. Guilford's methods, Defendant points to the disparity between the $50,585 estimated reasonable cost of Plaintiff's neurostimulator trial compared to the $2,500 cash pay discounted rate Plaintiff was actually charged by her physician, Dr. Feldman. *Id.* at 2, 6; *Reply* [#68] at 3.

Plaintiff contends that Defendant's characterizations of Mr. Guilford's work as "the product of data entry," "confusing," and "unreliable," are spurious. *Response* [#59] at 7. Plaintiff asserts that Mr. Guilford utilizes data from over 1.1 million medical providers located across the United States, with 6.7 billion patient encounter billing data, sourced from 31 distinct data sets, analyzed by a database he personally designed. *See id.* at 3-4. Plaintiff further asserts that in certain situations when local data is unavailable for a specific procedure the geographic radius is enlarged until sufficient data is available, i.e., a national data set. *See id.* at 8. Plaintiff additionally asserts "that most medical billing specialists perform the exact same methodology by analyzing medical billing data at the national level and then applying a geographic adjustment factor when there is inadequate data at the local level" and that "the 80th percentile is the industry standard in medical billing analytics." *Id.* at 8-9. Lastly, Plaintiff rejects Defendant's arguments about the disparity between Mr. Guilford's reasonable cost and Dr. Feldman's actual cost because "[i]t has long been Colorado law that any third-party benefit obtained by the injured plaintiff accrues solely to the plaintiff's benefit, is not deducted from the amount of the tortfeasor's liability, and is irrelevant." *Id.* at 8 (internal emphasis and citations omitted). Defendant replies that Plaintiff's last point is incorrect as "[the law] does not render evidence of such

third-party benefits irrelevant or inadmissible to challenge the admissibility of expert evidence or to impeach such evidence . . . [thus,] said payment is relevant and admissible to show the lack of reliability and usefulness of Mr. Guilford's opinion." *Reply* [#68] at 4.

The Court begins with this last issue, addressing Defendant's arguments concerning the disparity between Mr. Guilford's estimated reasonable cost and Dr. Feldman's actual cost, Plaintiff's assertions that such disparities are inadmissible under the relevant Colorado law regarding third-party benefits to injured plaintiffs, and Defendant's reply that such payment disparities are relevant and admissible to show lack of reliability. Both parties cite *Volunteers of America Colorado Branch v. Gardenswartz*, 242 P.3d 1080 (Colo. 2010), or decisions citing that case, to support their propositions about the admissibility of evidence regarding third-party benefits relating to medical expense payments. *Response* [#59] at 8; *Reply* [#68] at 3-4. However, this argument strays from the parameters of a motion asserted under Rule 702. The instant Motion [#56] is to exclude Mr. Guilford's testimony on the basis that his methods are unreliable, and "[t]he focus, of course, must be solely on principles and methodology, not on the conclusions that they generate." *Daubert*, 509 U.S. at 595. Because Mr. Guilford's assessment that the reasonable estimated cost of $50,585 for Dr. Feldman's neurostimulator trial is a conclusion generated by his methodology, such a conclusion, and its contrast to the actual cost of $2,500, is irrelevant to the Court's determination of the reliability of Mr. Guilford's methodology.[3]

---

[3] The Court notes, however, that relevant legal authority appears to support Plaintiff's proposition that evidence of Plaintiff's actual cost charged by Dr. Feldman versus the reasonable cost estimated by Mr. Guilford is inadmissible. *See Seely v. Archuleta*, No. 08-cv-02293-LTB-KMT, 2011 WL 2883625, at*4 (D. Colo. July 18, 2011) (stating that "evidence of discounted or written off medical bills is inadmissible"); Colo. Rev. Stat. § 10-1-135(10)(a) ("The fact or amount of any collateral source payment or benefit shall not be admitted as evidence in any action against

Next, the Court finds that Mr. Guilford's opinions are reliably based on quantitatively sufficient facts and data. *See United States v. Lauder*, 409 F.3d 1254, 1264 (10th Cir. 2005) (Rule 702's "reference to 'sufficient facts or data' calls for a quantitative rather than qualitative analysis"). Courts may consider a variety of appropriate factors in assessing reliability, including, but not limited to: (1) whether the methodology is one that can be tested or falsified—that is, whether the witness' approach can be challenged in some objective sense, or whether it is instead simply a subjective, conclusory approach that cannot reasonably be assessed for reliability; (2) whether the method or technique has been subject to peer review and publication; (3) whether there are known or potential rates of error with regard to the use of the method; and (4) whether the method or approach has "general acceptance" in the scientific community. *See Daubert*, 509 U.S. at 593-94; *Kumho Tire*, 526 U.S. at 149-50. However, Defendant "need not prove that the expert is indisputably correct or that the expert's theory is 'generally accepted.'" *Mitchell*, 165 F.3d at 781.

Here, Mr. Guilford based his opinions regarding the reasonable cost of Plaintiff's past and future medical expenses on the values generated by a data-entry database he personally designed based on his years of experience and educational training as a data and financial analyst, a database which utilizes data from over 1.1 million medical providers located across the United States, with 6.7 billion patient encounter billing data,

---

an alleged third-party tortfeasor . . . ."); *Sunahara v. State Farm Mut. Auto. Ins. Co.*, 280 P.3d 649, 652 (Colo. 2012) (holding that the Colorado Court of Appeals erred by affirming the admission of evidence of the amounts paid for the plaintiff's medical expenses because the pre-verdict evidentiary component of Colorado's collateral source rule prohibits the admission); *Crossgrove v. Wal-Mart Stores, Inc.*, 280 P.3d 29 (Colo. App. 2010) (holding that evidence of the amount paid by third-party payors, and the amount written off from the billed amount due under a contract between the third-party payor and the provider, is inadmissible even to show the reasonable value of services rendered because the payment and discounts constitute collateral sources).

sourced from 31 distinct data sets. *See Response* [#59] at 3-4. Further, Plaintiff has showed that Mr. Guilford logically chose the eightieth percentile value generated as the reasonable cost estimate based on industry standards that such a percentile would allow Plaintiff to seek treatment at eighty percent of healthcare providers and have such treatment covered by a damages award. *Id.* at 8-9. Thus, the Court holds that Mr. Guilford's methodology is reliably based on quantitatively sufficient facts and data to be useful to the trier of fact, and that the weight Mr. Guilford's opinions should therefore be determined by the trier of the fact. *See Daubert*, 509 U.S. at 596 ("Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof . . . rather than wholesale exclusion . . . are the appropriate safeguards where the basis of [expert] testimony meets the standards of Rule 702."); *United States ex rel. Maxwell v. Kerr-McGee Chem. Worldwide, LLC.*, No. CIVA04CV01224PSFCBS, 2006 WL 2053534, at *6 (D. Colo. July 21, 2006) (stating that the defendant's attack on the plaintiff's methodology is more properly directed to the weight of the proffered opinions and not to their admissibility); *see also United States v. 14.38 Acres of Land*, 80 F.3d 1074, 1079 (5th Cir. 1996) (the perceived flaws in the testimony of the experts are "matters properly to be tested in the crucible of the adversarial proceedings; they are not the basis for truncating that process"). Thus, the Motion [#56] is **denied** to the extent that Defendant seeks to bar Mr. Guilford's opinions on the basis of his methodology.

**B.     Fed. R. Evid. 403**

Fed. R. Evid. 403 allows a court to "exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly

presenting cumulative evidence." Fed. R. Evid. 403. Even when one of the dangers listed by Fed. R. Evid. 403 is present, "it must substantially outweigh the probative value of the evidence in order to be excluded under Rule 403." *United States v. Irving*, 665 F.3d 1184, 1213-14 (10th Cir. 2011); *see also United States v. Archuleta*, 737 F.3d 1287, 1293 (10th Cir. 2013). The proponent of expert testimony bears the burden of showing that the expert's testimony is admissible. *United States v. Nacchio*, 555 F.3d 1234, 1241 (10th Cir. 2009). However, "[e]xclusion of evidence under Rule 403 that is otherwise admissible under the other rules is an extraordinary remedy and should be used sparingly." *World Wide Ass'n of Specialty Programs v. Pure, Inc.*, 450 F.3d 1132, 1139 (10th Cir. 2006) (quotations omitted).

The Court first notes that Defendant badly muddles its Rule 403 argument with its Rule 702 argument; in fact, Defendant fails to make any *discrete* argument as to why Mr. Guilford's opinion should be excluded under Rule 403. As best the Court can discern from this entanglement, Defendant asserts under Rule 403 that (1) "Mr. Guilford's opinion is unqualified and unreliable and will confuse the issues, mislead the jury, and unfairly prejudice the Defendant," *Motion* [#56] at 6, (2) Mr. Guilford's use of the eightieth percentile as the estimated reasonable value "is not based on sufficient facts and data and, as a result, it is confusing, unreliable, and will mislead the jury into thinking the 80th percentile value is the only 'reasonable value,'" *id.* at 8, (3) "Mr. Guilford switches back and forth between local and nationwide datasets, which makes his opinion confusing, misleading, and unhelpful," *id.* at 7, and (4) "[t]he probative value of Mr. Guilford's opinion (if any) is far outweighed by the danger of unfair prejudice to the Defendant if Mr. Guilford's unqualified, unreliable, and misleading testimony is introduced at trial," *id.* at 3.

The Court first addresses Defendant's first and second assertions under Rule 403. Defendant contends that (1) "Mr. Guilford's opinion is unqualified and unreliable and will confuse the issues, mislead the jury, and unfairly prejudice the Defendant," and (2) Mr. Guilford's use of the eightieth percentile as the estimated reasonable value "is not based on sufficient facts and data and, as a result, it is confusing, unreliable, and will mislead the jury into thinking the 80th percentile value is the only 'reasonable value.'" *Id.* at 6, 8. As discussed above in sections II.A.1-2, the Court has already found that Plaintiff has met her burden to establish Mr. Guilford's qualifications to opine on the reasonableness of Plaintiff's estimated medical costs and that Mr. Guilford's methodology in forming those opinions are reliably based on sufficient facts and data. Because Defendant's first and second assertions for excluding Mr. Guilford's testimony are solely based on his opinions and methodology being purportedly unqualified and unreliable, *see Motion* [#56] at 6, 8, and because Mr. Guilford's opinions have already been found to be qualified and reliable, the Court finds, in the absence of any other discernible argument to the contrary, that those opinions will not confuse the issues, mislead the jury, or unfairly prejudice Defendant. *See Irving*, 665 F.3d at 1213-14; *Archuleta*, 737 F.3d at 1293; *Pure, Inc.*, 450 F.3d at 1139.

The Court next addresses Defendant's third assertion that "Mr. Guilford switches back and forth between local and nationwide datasets, which makes his opinion confusing, misleading, and unhelpful." *Motion* [#56] at 6-7. Plaintiff responds that, "[i]n certain situations, local data is unavailable for a specific procedure (e.g. due to its rarity, the remoteness of the patient, etc.). In these cases, the radius for that code is enlarged until sufficient data is available. If a national sample is pulled, a geographic adjustment

13

factor is applied to make it geographically relevant." *Response* [#59] at 8. As discussed above in section II.A.2, Plaintiff has met her burden of establishing the reliability of Mr. Guilford's methodology in using both national and local data in his statistical analysis, in line with industry standards. Therefore, the Court finds that Mr. Guilford's opinions being based on both national and local data will not be confusing or misleading, but will be helpful to Plaintiff's claims relating to the reasonableness of her estimated medical costs. *See Kumho Tire Co.*, 526 U.S. at 147; *Summers v. Missouri Pac. R.R. Sys.*, 132 F.3d at 604; *Irving*, 665 F.3d at 1213-14; *Archuleta*, 737 F.3d at 1293; *Pure, Inc.*, 450 F.3d at 1139.

The Court next addresses Defendant's fourth assertion that "[t]he probative value of Mr. Guilford's opinion (if any) is far outweighed by the danger of unfair prejudice to the Defendant if Mr. Guilford's unqualified, unreliable, and misleading testimony is introduced at trial." *Motion* [#56] at 3. Plaintiff maintains that "Mr. Guilford is qualified to opine on the reasonableness of medical bills, his method is reliable, and he offers considerable value for a jury." *Response* [#59] at 2. Further, Plaintiff asserts "that the reasonable values reached by Mr. Guilford would permit a patient to go to 80% of all doctors in the region with that value amount and receive the same treatment Plaintiff received. These reasonable figures assist the jury in appreciating the reasonableness of the charges that were (or will be) actually billed." *Id.* at 11. The Court notes that Defendant's only explanation as to why it would be prejudiced by Mr. Guilford's testimony is that his opinion is unqualified and unreliable, thereby making it misleading to the jury, and therefore prejudicial to the Defendant. *See Motion* [#56] at 3, 8. As discussed above in sections II.A.1-2, the Court has found Mr. Guilford's opinions qualified and reliable. Therefore, in

14

the absence of any further substantive argument by Defendant, the Court finds the probative value to the jury of Mr. Guilford's testimony in determining the reasonableness of Plaintiff's estimated medical costs outweighs the purported prejudice to Defendant of such opinions. *See Kumho Tire Co.*, 526 U.S. at 147; *Summers*, 132 F.3d at 604; *Irving*, 665 F.3d at 1213-14; *Archuleta*, 737 F.3d at 1293; *Pure, Inc.*, 450 F.3d at 1139. Thus, the Motion [#56] is **denied** to the extent Defendant seeks to exclude Mr. Guilford's opinions under Rule 403 as confusing, misleading, unhelpful, and/or prejudicial to Defendant.

**C.    Relevance**

Although not explicitly stated as a separate basis, Defendant's Motion [#56] also appears to ask the Court to exclude Mr. Guilford's opinions on the basis of relevance. For example, Defendant asserts that (1) "one does not require any specialize knowledge, skill, experience, training, or education to [utilize Mr. Guilford's methodology], which means that Mr. Guilford's 'methodology' does not require any expertise and his opinion is thus, irrelevant and not useful to the jury," *Reply* [#68] at 2, and (2) "with respect to his opinion regarding Plaintiff's future treatment costs, Mr. Guilford is grading his own work . . . [which] renders his opinion irrelevant and unhelpful," *id.* at 5.  Relevance of evidence is generally not determined directly under Rule 702 (which focuses on the qualifications and methodology of the expert witness) or Rule 403 (which proceeds on the assumption that the evidence at issue is relevant). Thus, as best the Court can discern, Defendant implicitly seeks to bar Mr. Guilford's pursuant to Fed. R. Evid. 401 and 402.

Regarding assertion (1), the Court construes Defendant's argument as stating that, because any individual may purchase medical billing analytics from AccuMed's website,

15

Mr. Guilford's opinion is not specialized by knowledge, skill, experience, training, or education, and thus is irrelevant and should be excluded. *See Reply* [#68] at 2-3. As discussed by Plaintiff, "Mr. Guilford offers his analysis of medical billing reasonableness for sale on his website, and any individual can type in medical billing codes to receive an outputted analysis from Mr. Guilford's software[, which] Mr. Guilford personally helped design . . . and verify the validity of the underlying data." *Response* [#58] at 6. The Court finds that Mr. Guilford's opinion, whether it be procured via AccuMed's website or through Mr. Guilford's retention as an expert, is relevant to the reasonableness of Plaintiff's estimated medical costs. *See Kumho Tire Co.*, 526 U.S. at 147; *Summers*, 132 F.3d at 604; *Irving*, 665 F.3d at 1213-14; *Archuleta*, 737 F.3d at 1293; *Pure, Inc.*, 450 F.3d at 1139.

Defendant also asserts that, because "Mr. Guilford is unqualified to educate the jury as to what constitutes 'reasonable' , . . . his opinion is not relevant, reliable, or helpful to the jury . . . . in the context of Plaintiff's future treatment costs where the only evidence Plaintiff has produced as to the 'reasonable' costs of her future care are the AccuMed estimates generated by Mr. Guilford. Thus, with respect to his opinion regarding Plaintiff's future treatment costs, Mr. Guilford is grading his own work. This further renders his opinion irrelevant and unhelpful." *Reply* [#68] at 5. Regarding the first part of the assertion that "Mr. Guilford is unqualified to educate the jury as to what constitutes 'reasonable,'" *id.*, the Court has already found Mr. Guilford to be qualified, *see* § II.A.1, *supra.* Regarding the latter part of the assertion that "Mr. Guilford is grading his own work" by testifying as to the reasonableness of the estimates generated by his own statistical analysis, *see Reply* [#68] at 5, the Court fails to see how this renders Mr.

16

Guilford's opinion irrelevant. As noted by Plaintiff, "Defendant had the ability to retain a medical billing expert long ago and made the decision not to. Defendant could even have obtained medical billing analysis books and databases relied upon by medical billing experts to impugn the reasonableness of Plaintiff's billing . . . [or] Defendant could have taken Mr. Guilford's deposition to learn more about his data and calculations but chose not to." *Response* [#59] at 9. In the absence of any actual substantive argument by Defendant, the Court finds the contested opinion appears relevant to Plaintiff's claims about the reasonableness of Plaintiff's estimated medical costs and the methodologies employed by Mr. Guilford to reach those estimates. *See Kumho Tire Co.*, 526 U.S. at 147; *Summers*, 132 F.3d at 604; *Irving*, 665 F.3d at 1213-14; *Archuleta*, 737 F.3d at 1293; *Pure, Inc.*, 450 F.3d at 1139. Thus, the Motion [#56] is **denied** to the extent Defendant contests the relevancy of Mr. Guilford's opinions.

### III. Conclusion

For the reasons set forth above,

IT IS HEREBY **ORDERED** that the Motion [#56] is **DENIED**.

Dated: July 28, 2021

BY THE COURT:

Kristen L. Mix
United States Magistrate Judge